Jose Antonio MONCIVAIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–09–01131–CR.

Court of Appeals of Texas, Houston (1st Dist.).

July 21, 2011.

Discretionary Review Refused Feb. 29, 2012.

---

Winston E. Cochran Jr., Houston, TX, for Appellant.

Carol M. Cameron, Assistant District Attorney, Patricia R. Lykos, Harris County District Attorney, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, HIGLEY, and BROWN.

## OPINION

HARVEY BROWN, Justice.

A jury found Jose Antonio Moncivais guilty of murder and assessed his punishment at 50 years' confinement in the Institutional Division of the Texas Department of Criminal Justice.[1] On appeal, Moncivais contends the evidence is legally and factually insufficient to support the jury's negative finding on the issue of sudden passion during the punishment phase of his trial. We hold that the evidence is legally and factually sufficient to support the jury's negative finding. We affirm.

### Background

Jose Antonio Moncivais got into an argument with Brian Escontrias that escalated into a physical fight in which Brian suffered a laceration to his face. Moncivais walked away from the fight and went home with his girlfriend. An hour later, Moncivais heard someone hammer on his front door, and the next morning he found .40 caliber bullet casings in front of his house.

Later that same day, Moncivais's brother called to tell him that Brian's brothers and several other men were on their way to confront him over what they perceived to be an attack on Brian the previous evening. Moncivais told his girlfriend that "if things were to get out of line that there was a gun right there [in the house]—if things just really got out of hand you know what I'm saying to—she knew what to do." Moncivais went outside to wait for the men, expecting to engage in a one-on-one fight, and paced back and forth in front of his house.

Brian's brothers, Erik and Adrian Escontrias, and three other men arrived at

---

1. *See* Tex. Penal Code Ann. § 19.02(b) (West 2003).

Moncivais's home. Erik put on work gloves as he got out of the car and began to fight with Moncivais. After Erik knocked Moncivais to the ground, Adrian joined the fight by pinning down Moncivais's arm while Erik continued to hit him. Moncivais's girlfriend fired a shot into the air abruptly stopping the fight and causing everyone to freeze. Erik, Adrian and the other men then ran towards their cars. Moncivais's girlfriend shot the gun again and struck one of the men as they ran away. Moncivais grabbed the gun shouting, "give [me] the f—ing gun and shoot the motherf—ers." Moncivais continued to pursue Erik, Adrian, and the others as they ran away and shot in the directions of their cars. The driver's side window of Erik's car shattered. Moncivais continued to shoot at the car from only a couple feet away and shot Erik three times in the back and side. Erik later died at the hospital.

At trial, several law enforcement officers testified to their investigation and three eyewitnesses testified to the circumstances surrounding the fight. A neighbor testified that Moncivais looked mad and agitated as he paced in front of his house waiting for the men to arrive. Adrian and one of the other men who arrived with Erik testified that only two people fought with Moncivais. Adrian asserted that his statement to the police that the group as a whole attacked Moncivais was not accurate. Another bystander to the fight testified that he heard the gun click twice without firing, as if Moncivais was not finished shooting, and described the clicking as "just out of rage."

Moncivais testified that he felt like his life was in danger and he acted in self-defense. He testified that the banging on his door the night before and the .40 bullet casings in front of his house gave him a bad feeling. He also stated that Erik and all of the other men participated in the fight.

The jury found Moncivais guilty of murder. At the punishment phase, the jury found that Moncivais did not commit the murder under the immediate influence of sudden passion and assessed punishment at 50 years' confinement. Moncivais timely appealed.

## Sufficiency of the Evidence

Moncivais contends the evidence is legally and factually insufficient to support the jury's finding that he did not kill Erik under the immediate influence of sudden passion.

### A. Sudden Passion

Proof of sudden passion can reduce an offense from a first degree felony to a second degree felony and the defendant must prove sudden passion by a preponderance of the evidence. *See* TEX. PENAL CODE ANN. § 19.02(d) (West 2003); *see McKinney v. State*, 179 S.W.3d 565, 569 (Tex.Crim.App.2005); *see also Hernandez v. State*, 127 S.W.3d 206, 211–12 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd) (holding that defendant bears burden at punishment phase to prove issue of sudden passion by preponderance of evidence). " 'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2). " 'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX. PENAL CODE ANN. § 19.02(a)(1); *see also Hernandez*, 127 S.W.3d at 211.

Sudden passion must arise at the time of the offense and cannot result solely from former provocation. *Hernandez*, 127 S.W.3d at 213. Neither ordinary anger nor fear alone raises an issue on sudden passion arising from adequate cause. *See id.* at 213–14; *see also Naasz v. State*, 974 S.W.2d 418, 425 (Tex.App.-Dallas 1998, pet. ref'd) (stating defendant's testimony of being upset and angry over culmination of events did not rise to level of adequate cause). Similarly, a defendant may not rely on a cause of his own making to support an argument for sudden passion. *See Smith v. State*, 355 S.W.3d 138, 147 (Tex.App.-Houston [1st Dist.] 2011, pet. filed); *see also Hernandez*, 127 S.W.3d at 211 (holding that ordinary anger or causes of defendant's own making are not legally adequate causes); *Trevino v. State*, 157 S.W.3d 818, 822 n. 4 (Tex.App.-Fort Worth 2005, no pet.) (stating that defendant's conduct led complainant to fire a gun at him and therefore complainant's conduct did not constitute adequate cause).

A defendant must prove that the homicide occurred while the passion still existed and before there was reasonable opportunity for the passion to cool. *See McKinney*, 179 S.W.3d at 569. Anticipation of an event and preparation of a response indicates a defendant had time to deliberate over an action and did not act under the immediate influence of sudden passion. *Id.* at 570 (holding evidence that defendant went home, sat at his desk for some time, and then retrieved his gun in preparation for fight showed deliberation and not sudden passion).

## B. Legal Sufficiency

In his first issue, Moncivais contends the evidence is legally insufficient to support the jury's negative finding on sudden passion and that we should remand for a new punishment hearing.

## 1. Standard of Review

In *Brooks v. State*, the Court of Criminal Appeals held that the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). We review issues on which the defendant had the burden of proof by a preponderance of the evidence, like sudden passion, under a different standard and apply the legal sufficiency standard utilized in civil cases. *See Smith*, at 147; *see also Cleveland v. State*, 177 S.W.3d 374, 387–88 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd), *cert. denied*, 547 U.S. 1073, 126 S.Ct. 1774, 164 L.Ed.2d 523 (2006); *see also Nolan v. State*, 102 S.W.3d 231, 237–38 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) (applying civil standard to legal sufficiency review of jury's rejection of defendant's affirmative defense).

The civil legal sufficiency standard requires a two-step analysis. First, we examine the record for any evidence that supports the jury's negative finding while ignoring all evidence to the contrary. *See Smith*, 355 S.W.3d at 147; *Cleveland*, 177 S.W.3d at 387 (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989)). Second, if no evidence supports the negative finding, then we examine the entire record to determine whether the evidence establishes the affirmative defense as a matter of law. *Id.* We must defer to the fact finder's determination of the weight and credibility to give the testimony and the evidence at trial. *See Cleveland*, 177 S.W.3d at 388–89.

### 2. Legally Sufficient Evidence of No Sudden Passion

In examining the record under the first prong of the civil legal sufficiency standard, we conclude that some evidence exists to support the jury's negative finding on the issue of sudden passion. Moncivais testified that his brother warned him that Erik was coming to his house to fight. Moncivais showed his girlfriend his gun to use in case the fight escalated. The jury heard testimony from the neighbor that Moncivais waited outside his home for the fight to begin and appeared agitated before they even arrived. Anticipation of and preparation for the fight constitutes some evidence that Moncivais had time to deliberate regarding his actions. *See McKinney*, 179 S.W.3d at 569–70 (holding that defendant was not under immediate influence of sudden passion when he anticipated event and prepared himself to respond); *see also Ontiveros v. State*, No. 04–09–00590–CR, 2010 WL 4488611, at *3 (Tex.App.-San Antonio Nov. 10, 2010, pet. dism'd) (mem. op., not designated for publication) (holding evidence that defendant went to retrieve his gun before discovering that his tires were slashed demonstrated anticipation and preparation even before he was provoked and was not sufficient to require sudden passion instruction).

The record satisfies the first prong of civil legal sufficiency standard of review because some evidence exists that Moncivais was not under the immediate influence of sudden passion when he shot Erik. *See Cleveland*, 177 S.W.3d at 390. Therefore, we need not address the second prong of the civil legal sufficiency standard, whether Moncivais proved sudden passion as a matter of law, because that prong only applies in the absence of any evidence to support the jury's finding. *See id.* at 389. We hold that the evidence is legally sufficient to support the jury's negative finding of sudden passion. *See Smith*, 355 S.W.3d at 147.

We overrule Moncivais's first issue.

### C. Factual Sufficiency

In his second issue, Moncivais contends the evidence is factually insufficient to support the jury's negative finding on the sudden passion issue.

#### 1. Standard of Review

We apply the factual sufficiency standard announced in *Meraz v. State*, 785 S.W.2d 146, 154–55 (Tex.Crim.App.1990), to review an issue on which the defendant has the burden of proof by a preponderance of the evidence. *Zuniga v. State*, 144 S.W.3d 477, 482 (Tex.Crim.App.2004) (holding that *Meraz* standard is suitable for sufficiency reviews regarding affirmative defenses because burden of proof on defendant is preponderance of evidence); *see Cleveland*, 177 S.W.3d at 390–91 (applying *Meraz* standard to review factual sufficiency of jury's negative sudden passion finding). Again, the *Jackson v. Virginia* standard advanced in *Brooks* applies to a sufficiency review of the elements of the offense the State must prove beyond a reasonable doubt, not to the jury's negative finding of an issue on which the defendant had the burden of proof by a preponderance of the evidence. *Brooks*, 323 S.W.3d at 924 n. 67 (Cochran, J., concurring) (noting that factual sufficiency standard in *Meraz* is appropriate for review of issues, such as affirmative defenses, on which defendant has burden of proof by preponderance of evidence).

Under *Meraz*, we consider all the evidence neutrally, to determine if the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Crim.App. 2003); *Meraz*, 785 S.W.2d at 154–55;

*Smith,* 355 S.W.3d at 150. We may not, however, intrude on the fact finder's role as the sole judge of the weight and credibility of the witnesses' testimony. *See Meraz,* 785 S.W.2d at 154–55; *Cleveland,* 177 S.W.3d at 390–91.

### 2. Factually Sufficient Evidence of No Sudden Passion

■ Moncivais relies largely on his own testimony to argue that the jury's finding of no sudden passion was against the great weight and preponderance of the evidence. He essentially makes a self-defense argument. He testified that the banging on his door the night before and the .40 bullet casings in front of his house made him apprehensive. Moncivais testified that when he saw Erik approach him with gloves on, he feared Erik could stab him. He also stated that all of the men joined in the fight, not just Erik and Adrian, and he thought one of the men reached into the car to get a gun. In other words, Moncivais asserts that he felt like his life was in danger when he shot Erik.

In addition to the evidence indicating Moncivais's mindset and self-defense, the jury heard other evidence from which it could have found sudden passion. Moncivais believed he would be fighting one-on-one; instead, he was attacked by at least two men, and potentially up to five men if the jury believed Moncivais's testimony. Adrian held Moncivais's arm to the ground while Erik continued to hit him. Further, the first gunshot ended the fighting abruptly and only an instant passed between the fight and when Erik and the others fled the scene. Several witnesses also testified that Moncivais was screaming as he pursued his attackers and that the gun clicked several times as he continued to shoot out of rage. As the sole judge of the weight and credibility of a witness's testimony, the jury was entitled to disbelieve Moncivais's testimony. *See*

*Hernandez,* 127 S.W.3d at 214. As discussed above, the jury heard evidence that Moncivais took certain steps in anticipation of and preparation for the fight, including showing his girlfriend a gun to use in case the fight escalated and going outside his home to wait for his attackers. *See McKinney,* 179 S.W.3d at 570; *see also Ontiveros,* 2010 WL 4488611, at *3. Witnesses also testified that Moncivais's gun was the only weapon displayed during the fight and no one else was seen carrying a weapon. *See McKinney,* 179 S.W.3d at 570 (stating evidence that complainant did not have a gun and only yelled and pushed defendant supports finding that defendant was not acting under immediate influence of sudden passion). While the jury could have decided otherwise, we cannot say based on this evidence that the jury's finding of no sudden passion is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Hernandez,* 127 S.W.3d at 213.

We overrule Moncivais's second issue.

### Conclusion

We hold the evidence is legally and factually sufficient to support the jury's negative finding on the issue of sudden passion. We affirm the judgment of the trial court.

TERRY JENNINGS, Justice, concurring.

I agree with the majority that the evidence is factually sufficient to support the jury's implicit rejection of the contention of appellant, Jose Antonio Moncivais, that he caused the death of the complainant under the immediate influence of sudden passion. *See* TEX. PENAL CODE ANN. § 19.02(d) (Vernon 2011). However, I write separately because appellant's legal-sufficiency challenge is not appropriate on the issue of sudden passion, upon which appellant had the burden of proof and the State had the

burden of persuasion, and not of production, to refute. *Cleveland v. State*, 177 S.W.3d 374, 392 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd) (Jennings, J., concurring).

In *Cleveland*, this Court, in an en banc opinion, held that an appellate court is to employ the same standard of review "applied in civil cases" in conducting a legal-sufficiency review of a fact finder's rejection of an accused's defensive theory. 177 S.W.3d at 387. However, in a civil case, when a party attacks the legal sufficiency of the evidence in support of an adverse finding on an issue upon which the party had the burden of proof, the party "must demonstrate on appeal that the evidence establishes, *as a matter of law,* all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (emphasis added). In reviewing a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence that supports the finding, the reviewing court must then examine the entire record to determine if the contrary proposition is "established as a matter of law." *Id.* A point of error should be sustained only if the contrary proposition is conclusively established. *Id.* Such a "matter of law" challenge is not applicable in criminal cases where the State has the burden of *persuasion,* not a burden of production, in discrediting the defensive theories of an accused. *Saxton v. State*, 804 S.W.2d 910, 912–13 (Tex. Crim.App.1991).

In *Saxton,* the Texas Court of Criminal Appeals reversed a court of appeals' holding that "the State failed to produce evidence to refute [the defendant's] claim of self-defense and that all of the evidence is uncontradicted and is consistent with self-defense." *Id.* at 912 (citation omitted).

The court specifically noted that the appellate court's "implicit holding that [the defendant] established 'as a matter of law' that he acted in self-defense is incorrect." *Id.* at 912 n. 4. The court disavowed its previous use of the "as a matter of law" language in the context of the issue of self-defense, "[g]iven that the question of whether the accused acted in self-defense is a fact issue for the trier of fact's determination and that 'beyond a reasonable doubt' is the required level of proof." *Id.* at 912 n. 3. In holding that the court of appeals utilized the wrong standard of review, the court emphasized:

> [T]he State has the burden of *persuasion* in disproving the evidence of self-defense. That is not a burden of *production,* i.e., one which requires the State to affirmatively produce evidence refuting the self-defense claim, but rather a burden requiring the State to prove its case beyond a reasonable doubt.... [M]ore importantly, case law instructs us that the issue of self-defense is an issue of fact to be determined by the jury. Defensive evidence which is merely consistent with the physical evidence at the scene of the alleged offense will not render the State's evidence insufficient since the credibility determination of such evidence is solely within the jury's province and the jury is free to accept or reject the defensive evidence. A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory.

*Id.* at 913–14 (citations omitted).

Accordingly, in reviewing the legal sufficiency of the evidence in support of a fact finder's rejection of a defensive issue, "we look not to whether the State presented evidence which refuted appellant's [defensive evidence], but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution,

any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the [defensive] issue beyond a reasonable doubt." *Id.* at 914 (citations omitted).[1]

The issue of sudden passion, like the issue of self-defense, is a fact issue to be determined by the fact finder, and the fact finder is free to accept or reject defensive evidence on the issue. Such a defensive theory, by its very nature, cannot be conclusively established "as a matter of law" in a criminal case. Thus, this Court's en banc court's holding to the contrary, i.e., that we employ the legal sufficiency standard of review "applied in civil cases" to review an accused's challenge to the fact finder's rejection of a defensive issue in a criminal case, is in error. Accordingly, this Court should overrule *Cleveland.*

Justice JENNINGS, concurring.

1. In contrast, when a defendant challenges the factual sufficiency of the rejection of a defense, we review all of the evidence in a neutral light and ask whether the State's evidence, taken alone, is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. *Zuliani v. State,* 97 S.W.3d 589, 595 (Tex.Crim.App.2003).