**Opinion issued November 10, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00561-CR

———————————

**JONATHAN ANDREW ROSARIO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 186th District Court**
**Bexar County, Texas[1]**
**Trial Court Case No. 2013CR5658**

---

**MEMORANDUM OPINION**

---

[1]    The Texas Supreme Court transferred this appeal from the Court of Appeals for the Fourth District of Texas. Misc. Docket No. 14-9121 (Tex. July 3, 2014); *see* TEX. GOV'T CODE ANN. § 73.001 (West 2011) (authorizing transfer of cases). We are unaware of any conflict between precedent of the Court of Appeals for the Fourth District and that of this Court on any relevant issue.  See TEX. R. APP. P. 41.3.

Jonathan Rosario was convicted of murdering Kevin Hill and sentenced to confinement for 40 years. On appeal, he argues that there is legally-insufficient evidence to support the jury's rejection of his self-defense claim and his sudden-passion defense. He also asserts that there is factually-insufficient evidence to support the jury's rejection of his sudden-passion defense. We affirm.

**Background**

Robert Aldana and Romello "Mello" James met at a pre-arranged location for a rematch of an earlier fistfight. Aldana and James each brought a group of friends to witness the fight and serve as "back-ups" if the fight escalated. Kevin Hill was at the fight.

Shay Godley was a key player in the events that led to Hill's death. Upon learning of Godley's decision to attend the fight that night, Rosario accompanied Godley to protect her because she "was like a sister" to him.

Both groups brought weapons to the fight, including knives, a bat, and a taser. Aldana and James's rematch escalated and turned into a chaotic brawl. During this brawl, Godley began fighting with Hill. Rosario then entered the fight and began attacking Hill.

Witnesses at trial differed on what happened during the fight between Hill and Rosario. Rosario claimed that Hill had the upper hand and was choking him.

Rosario was slipping in and out of consciousness. To protect himself from Hill, Rosario stabbed Hill as the fight continued.

Other witnesses disagreed, testifying that the fight had ended and everyone, including Hill, had begun walking to his or her respective car. Four different witnesses testified that, while walking in front of Hill, they heard Hill gasp. They turned around to see Hill clutch his chest and fall to the ground. While attempting to assist Hill, they discovered blood and a stab wound. Both James and Godley testified that, afterwards, Rosario made racially charged statements indicating he "got" the "black guy" with the dreadlocks—statements Rosario denies making. Hill later died as a result of the stab wound.

The jury found Rosario guilty of murder. During the trial punishment phase, the jury was asked whether Rosario was under the immediate influence of sudden passion arising from adequate cause; it concluded that he was not. The jury assessed punishment at 40 years' confinement. He appealed.

**Self-Defense**

In his first issue, Rosario contends that the evidence is legally-insufficient to support the jury's implicit rejection of his claim that he acted in self-defense. Rosario asserts that "a rational jury could not have concluded that [Rosario's] belief that the complainant, Hill, threatened him with deadly force was not objectively reasonable." Rosario further argues that a reasonable juror would have

3

concluded that Rosario, fearing for his life, stabbed Hill during Hill's attack on Rosario, not after the fight had concluded.

## A. Applicable rule

A person is justified in using deadly force when he reasonably believes the use of deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. §9.31(a) (West 2011). A person cannot assert self-defense if "the actor provoked the other's use or attempted use of unlawful force." *See id.* § 9.31(b)(4); *Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984).

The defendant bears the burden to present "some evidence" to support a self-defense claim. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). After the defendant produces such evidence, the State must refute it by proving its case beyond a reasonable doubt. *Id.* If the jury finds the defendant guilty, the self-defense claim is implicitly rejected. *Id.* The jury is solely responsible for deciding issues of credibility within the evidence presented on the issue of self-defense. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

## B. Standard of review

We review a challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 318–20, 99 S. Ct. 2781, 2788–89 (1979). *See Brooks v. State*, 323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010);

*Ervin v. State*, 331 S.W.3d 49, 52–56 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Under the *Jackson* standard, evidence is insufficient to support a conviction if, considering all of the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 317–19, 99 S. Ct. at 2788–89; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from that evidence in making our determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Evidence is insufficient under four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; or (4) the acts alleged do not constitute the criminal offense charged. *See Jackson*, 443 U.S. at 314, 315, 318, 320, 99 S. Ct. at 2786, 2787, 2789 & n.11; *Laster*, 275 S.W.3d at 518; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

"Jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight" to be given the witnesses's testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981); *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). And, they may choose to believe

5

or disbelieve any part of any witness's testimony. *See Davis v. State*, 177 S.W.3d 355, 358 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Similarly, "reconciliation of conflicts in the evidence is within the exclusive province of the jury." *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) (quoting *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986)).

The *Jackson* standard defers to the factfinder to resolve any "conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 318–19, 99 S. Ct. at 2788–89; *Clayton*, 235 S.W.3d at 778. An appellate court presumes the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson,* 443 U.S. at 326, 99 S. Ct. at 2793. If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41, 102 S. Ct. 2211, 2218 (1982).

In a self-defense claim, the defendant bears the "burden of production" to produce "some evidence" to support the claim. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 914. Once the defendant produces some evidence to support the claim, the State has the "burden of persuasion" to disprove that defense. *Zuliani*, 97 S.W.3d at 594. To satisfy its burden, the State does not need to produce any evidence because the "credibility determination" of the defendant's evidence "is

solely within the jury's province and the jury is free to accept or reject the defensive evidence." *Saxton*, 802 S.W.2d at 914. "A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory." *Id.*

## C. Legally-sufficient evidence to support rejection of self-defense claim

Rosario claims he acted in self-defense because he was terrified of Hill. Rosario testified that before the fight started, the other group threatened to use a gun and, during the brawl, waved knives and a taser in a threatening manner.

According to Rosario, he entered the brawl to protect Godley. Rosario testified he began fighting Hill when he pulled Hill off Godley. Hill punched him in the head repeatedly and choked him, causing him to fear for his life. Rosario testified he only used his knife to protect himself from Hill's attacks.

The State argues that Rosario's trial testimony conflicted with his earlier police statements concerning his initial involvement in the fight with Hill. In his police statement, Rosario admitted to "throwing" and "pulling" Hill to the ground. At trial, Rosario testified instead that Hill hit him and knocked him to the ground. The State also argues that Rosario's trial testimony contradicted his statements to the police regarding Hill's stabbing. In the police statement, Rosario stated that "[Hill] had a knife that he pulled on" him, and, as Rosario struggled "to get the knife out of [Hill's] hand," he "hit the knife [and] it flung into [Hill]." At trial, he retracted those statements and testified that he used his own knife to push Hill off

him. Rosario claimed he "lie[d]" to the police about "the full story" of the stabbing for the sake of his mother, who was present when he was questioned by the police.

By testifying, Rosario produced "some evidence" to support a self-defense claim. *See Zuliani*, 97 S.W.3d at 594. The jury, however, was free to reject Rosario's testimony as not credible—especially in light of Rosario's admitted "lies." *See id.* Thus, viewing the evidence in the light most favorable to the verdict, the jury could have rationally chosen not to believe Rosario's testimony about the sequence of events and thus implicitly reject his self-defense claim. *See Denman v. State*, 193 S.W.3d 129, 132–33 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (holding appellant's testimony of self-defense is not enough to render opposing evidence legally insufficient). We therefore overrule his first issue.

## Sudden Passion

In his second and third issues, Rosario argues that the evidence was legally and factually insufficient to support the jury's rejection of his sudden-passion claim.

### A. Statutory definitions of sudden passion

Once a defendant has been found guilty of murder, he may raise, during the punishment phase of the trial as a sentence mitigation issue, whether he caused the death "under the immediate influence of sudden passion arising from an adequate

cause." TEX. PENAL CODE ANN. § 19.02(d) (West 2011); *Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013).

"'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed . . . which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2) (West 2011). "Anticipation of an event and preparation of a response indicates a defendant had time to deliberate over an action and did not act under the immediate influence of sudden passion." *Moncivais v. State*, 425 S.W.3d 403, 407 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

"'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX. PENAL CODE ANN. §19.02(a)(1) (West 2011). "Neither ordinary anger nor fear alone raises an issue on . . . adequate cause." *Moncivais*, 425 S.W.3d at 407.

If the defendant proves the issue of sudden passion by a preponderance of the evidence, the punishment range is reduced. TEX. PENAL CODE ANN. § 19.02(d); *Hernandez v. State*, 127 S.W.3d 206, 211 & n.1 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). "The defendant has the burden of production and persuasion with respect to the issue of sudden passion." *Wooten*, 400 S.W.3d at 605.

**B.    Standard of review**

We review challenges to the legal sufficiency of the evidence with respect to issues on which the defendant had the burden of proof by a preponderance of the evidence, like sudden passion, under the legal-sufficiency standard utilized in civil cases. *See Smith v. State*, 355 S.W.3d 138, 147–148 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *see also Cleveland v. State*, 177 S.W.3d 374, 387–88 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). The civil legal-sufficiency standard requires a two-step analysis. First, we examine the record for any evidence that supports the jury's negative finding on whether the defendant acted under sudden passion while ignoring all evidence to the contrary. *Smith*, 355 S.W.3d at 148. Second, if no evidence supports the negative finding, then we examine the entire record to determine whether the evidence establishes the issue as a matter of law. *Id.* We must defer to the factfinder's determination of the weight and credibility of the testimony and the evidence at trial. *Cleveland*, 177 S.W.3d at 388–89.

Finally, we may "conduct a factual-sufficiency review of a jury's negative finding on the sudden passion issue in the punishment stage of the trial." *Cleveland*, 177 S.W.3d at 390. Because a defendant has the burden of proof on the issue of sudden passion, by a preponderance of the evidence, in conducting a factual-sufficiency review, we consider all of the evidence relevant to the issue in a neutral light to determine whether the verdict is so against the great weight and

preponderance of the evidence as to be clearly wrong or manifestly unjust. *See* Tex. Penal Code Ann. § 19.02(d) (defendant has burden of proof on issue of sudden passion); *see also Johnson v. State*, 23 S.W.3d 1, 7, 11 (Tex. Crim. App. 2013); *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. App. Crim. 2006).

## C. Legally-sufficient evidence to conclude no sudden passion

Rosario asserts that because Hill attacked, choked, and injured him, the evidence is legally insufficient to support the jury's negative finding on the punishment issue of sudden passion.

Applying the first step of the analysis, we first examine the record solely for evidence that supports the jury's negative finding on the issue of sudden passion, while ignoring all evidence contrary to that finding unless a reasonable factfinder could not. *Matlock*, 392 S.W.3d at 670; *see Cleveland*, 177 S.W.3d at 387. "[W]e must defer to the factfinder's determination of the credibility of the witnesses and the weight to give evidence." *Cleveland*, 177 S.W.3d at 388.

The jury could have rationally concluded that, by anticipating the fight and preparing a response, Rosario had time to deliberate and was not acting under the immediate influence of sudden passion. *Moncivais*, 425 S.W.3d at 407; *see Hernandez v. State*, 127 S.W.3d 206, 213 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (explaining that "sudden passion must arise at the time of the offense and cannot result from former provocation").

11

One witness testified that he and Rosario brought the knives as protection to use at the fight because they feared "getting jumped" during the fight by someone with a weapon. Several witnesses testified that the fight between Rosario and Hill was over and Hill was returning to his car without serious injury before being stabbed. If the jury believed this testimony, it provides legally sufficient evidence to reject Rosario's sudden-passion claim. *See Moncivais*, 425 S.W.3d at 407 (holding that defendant has burden to show that actions occurred before "there was reasonable opportunity for the passion to cool"). We hold that the evidence concerning the jury's negative finding on sudden passion is legally sufficient and therefore, overrule Rosario's second issue.

## D. Factually-sufficient evidence to conclude no sudden passion

In our factual-sufficiency review of the evidence of a jury's rejection of a sudden-passion defense claim, we review all of the evidence neutrally, but we do not intrude on the factfinder's role as the sole judge of the weight and credibility given to any witness's testimony. *See Johnson*, 23 S.W.3d at 7. Rosario relies on the following evidence for his factual-sufficiency challenge: (1) emotions were running wild during the fight that evening, (2) "everybody was hitting everybody," and (3) Hill provoked him by beating, choking, and banging his head on the asphalt, before he stabbed Hill. While Rosario's testimony may raise the issue of

sudden passion, the jury could have disbelieved his story. *Moncivais*, 425 S.W.3d at 409.

The State presented evidence that the fight ended before Hill was stabbed. The jury could have rationally concluded that Rosario was not telling the truth that he stabbed Hill during the fight.

It is the jury's task to weigh the credibility of the witnesses and resolve conflicting testimony. *Dudley v. State*, 992 S.W.2d 565, 569 (Tex. App—Texarkana 1999, no pet.); *Naasz v. State*, 974 S.W.2d 418, 423 (Tex. App—Dallas 1998, pet. ref'd). If the jury believed the other witnesses instead of Rosario, it could have believed that Rosario had time to cool off between the end of the fight and the moment he approached Hill with a knife. Deferring to the jury's determination of the witnesses' credibility and their resolution of conflicting accounts of the fight, we conclude that there was factually-sufficient evidence to support the jury's rejection of Rosario's sudden-passion claim. We overrule Rosario's final issue.

## Conclusion

Having overruled all three issues, we affirm the judgment of the trial court.

Harvey Brown
Justice

13

Panel consists of Justices Jennings, Higley, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).